UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO MICHAEL MCELFRESH, | ) Case No.: 1:19-cv-0823 JLT |
| Plaintiff, | ) ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 30) AND |
| v. | ) REMANDING THE ACTION PURSUANT TO ENTENCE FOUR OF 42 U.S.C. § 405(g) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF FRANCISCO MICHAEL MCELFRESH, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Francisco Michael McElfresh asserts he is entitled to disability insurance benefits and a period of disability under Title II of the Social Security Act. Plaintiff argues the administrative law judge was erred in evaluating the medical record and his credibility. In addition, Plaintiff asserts his application was adjudicated by an unconstitutionally appointed ALJ. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In June 2015, Plaintiff filed an application for benefits, alleging he came disabled in June 2011 due to depression, ADHD/ADD, anxiety, social anxiety, and a learning disability. (Doc. 10-6 at 2; Doc. 10-7 at 6) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-4) Plaintiff requested an administrative hearing on the application and testified before an ALJ on May 14, 2018. (*See* Doc. 10-3 at 16, 32) The ALJ found Plaintiff was not disabled and issued an order denying benefits on August 14, 2018. (*Id.* at 16-24)

Plaintiff requested review of the ALJ's decision with the Appeals Council, which denied the request on April 17, 2019.  (*Id.* at 2-5)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

2

1 gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 14, 2011 through his date last insured of December 31, 2016." (Doc. 10-3 at 18) Second, the ALJ found Plaintiff's severe impairments included: "Borderline intellectual functioning, anxiety disorder, and history of open reduction internal fixation right tibia." (*Id.* at 19) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 19-21) Next, the ALJ found:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can occasionally climb ladders, ropes, and scaffolds, frequently climb ramps and stairs, and frequently bend, stoop, kneel, crouch, and crawl. The claimant can occasionally use foot controls with his right lower extremity. He must avoid prolonged exposure to fumes, gases, dust, and other pulmonary irritants. The claimant is limited to work involved non-complex routine tasks, with one to three step instructions.

(*Id.* at 21) With this residual functional capacity, the ALJ determined at step four that Plaintiff "was capable of performing past relevant work as a hand packager." (*Id.* at 24) Thus, the ALJ concluded Plaintiff was not disabled "at any time from June 14, 2011, the alleged onset date, through December 31, 2016, the date last insured." (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical evidence, including the opinion of his treating physician, Dr. McLain. (Doc. 13 at 15-20) In addition, Plaintiff asserts the ALJ erred in evaluating the credibility of his subjective complaints. (*Id.* at 22-23) Finally, Plaintiff contends his

application should be remanded for a new hearing because his "claim was adjudicated by an unconstitutionally appointed ALJ." (*Id.* at 23, emphasis omitted).  The Commissioner argues that the ALJ identified legally sufficient reasons to reject the opinion of Dr. McLain, and properly discounted Plaintiff's testimony.  (Doc. 17 at 9-17)  In addition, the Commissioner asserts "[t]he Court should reject Plaintiff's Appointments Clause claim." (*Id.* at 17, emphasis omitted)

**A.    Plaintiff's Appointment Clause Claim**

Plaintiff asserts that the ALJ who oversaw his hearing "was unconstitutionally appointed" and argues his "application should be immediately remanded for a new hearing with a different and constitutionally appointed ALJ." (Doc. 13 at 24).  In support of his argument, Plaintiff relies on the Supreme Court's decision in *Lucia v. S.E.C.,* 138 S. Ct. 2044, 2051 (2018).  In *Lucia*, the Court held that Securities and Exchange Commissioner ("SEC") administrative law judges were "Officers of the United States," subject to the requirements of the Appointments Clause.  *Lucia*, 138 S. Ct. at 2051-55; *see also U.S. Const. art.* II, § 2, cl. 2.  Thus, because the ALJ at issue in *Lucia* was not properly appointed, "a new hearing before a properly appointed official" was the appropriate remedy. *Id.*, citing *Ryder v. United States*, 515 U.S. 177, 182-83) (1995).

When *Lucia* was decided on June 21, 2018, Plaintiff's application was already pending before the ALJ, who had held the hearing but not yet issued a decision. Although *Lucia* did not involve the appointment of ALJs within the Social Security Administration, the Acting Commissioner of the SSA responded to the ruling by ratifying the appointments of ALJs and administrative appeals judges as her own to address any Appointments Clause concerns involving Social Security claims on July 16, 2018. *See* "Emergency Message EM-18003 REV 2", available at https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM (last visited Sept. 16, 2020). Accordingly, Plaintiff now argues the ALJ was "unconstitutionally appointed" at the time she presided over his hearing in May 2018, and the matter should be remanded for "a new hearing before a properly appointed ALJ." (Doc. 13 at 28)

Challenges under the Appointments Clause are not jurisdictional and forfeited if they are not timely asserted. *See Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991*); see also Kabani & Co. v. United States SEC*, 733 Fed. App'x. 918, 919 (9th Cir. 2018) (holding an Appointment Clause

challenge was forfeited when not timely raised). Indeed, *Lucia* conditioned relief in part upon making "such a timely challenge." *Lucia*, 138 S. Ct. at 2055 (emphasis added). Further, in the Ninth Circuit, "claimants … must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (explaining *Meanel's* requirements remain binding on courts within the Ninth Circuit).

Plaintiff acknowledges that "the issue was not raised in front of the agency." (Doc. 13 at 25) In seeking review by the Appeals Council, Plaintiff asserted only that "the administrative law judge erred in the decision" and issued a decision that was "not based on the substantial evidence in the file." (Doc. 10-5 at 64, emphasis omitted). Courts in the Ninth Circuit have determined that under such circumstances, where a claimant failed to raise an Appointments Clause challenge at the administrative level, the issue has been waived. *See Byrd v. Berryhill*, 2019 WL 95461, at *6 n.1 (E.D. Cal. Jan. 3, 2019) ("to the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during [her] administrative proceedings"); *Joyce Marie T. v. Comm'r of Soc. Sec. Admin.*, 2018 WL 7078674, at *7 (D. Or. Nov. 30, 2018) (rejecting an Appointments Clause challenge in part because the "objection was not made before the Agency"); *Younger v. Comm'r of SSA*, 2020 WL 57814, at *5 (D. Az. Jan. 6, 2020) ("district courts in this circuit have found that a claimant's failure to raise an Appointments Clause challenge before the ALJ forfeits the issue upon judicial review"). Consequently, the Court finds Plaintiff waived the challenge under the Appointments Clause, and remand is not mandated by this issue.

**B.     Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by Dr. Mary McLain, his treating physician. (Doc. 13 at 16-22) Because these opinions were contradicted by the state agency medical consultants—Drs. Reddy, Amado, Gallucci, and Linder (*see* Doc. 10-3 at 23) —the ALJ was required to identify clear and convincing reasons for rejecting the treating physician's opinions. *See Lester*, 81 F.3d at 831.

1. Opinions of Dr. Mary McLain

On May 15, 2018, Dr. Mary McLain completed a medical source statement regarding Plaintiff's dizziness, a mental impairment questionnaire, and a physical medical source statement. (Doc. 10-14 at 15-23) Dr. McLain noted that Plaintiff had been treated at Clinica Sierra Vista since 2011, and she first treated Plaintiff in November 2015. (*Id.* at 19) She indicated that she saw Plaintiff "approx[imately] every 3 months." (*Id.* at 23)

Dr. McLain diagnosed Plaintiff with depression, anxiety, agoraphobia, intellectual disabilities that were "not completely diagnosed," and a history of a displaced fractured right tibia. (Doc. 10-14 at 19, 23) According to Dr. McLain, Plaintiff also had "developmental disabilities that interfere [with] ability to function in normal environments." (*Id.* at 19) Dr. McLain indicated she believed Plaintiff had "a low IQ or reduced intellectual functioning" and she had "been trying to get [Plaintiff] tested since 2015 without result." (*Id.* at 21) She noted Plaintiff's physical symptoms included "ankle pain [with]

6

prolonged standing," "chronic swelling in [his] ankle," back pain and chronic dizziness. (*Id.* at 23) Further, his mental symptoms included impaired impulse control, difficulty thinking or concentrating, recurrent obsessions or compulsions, irrational fears, and illogical thinking. (*Id.* at 20)

According to Dr. McLain, Plaintiff's "treatment include[d] medications which help some [with] anxiety and depression." (Doc. 10-14 at 23) Dr. McLain opined Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation within the past 12-month period, each of at least two weeks duration. (*Id.* at 21) Dr. McLain indicated "even a minimal increase in mental demands or change in the environment [could] be predicted to cause the individual to decompensate." (*Id.* at 22) She believed Plaintiff would be absent from work about four days per month due to his impairments. (*Id.*)

Dr. McLain also opined Plaintiff had "ankle pain [with] prolonged standing," chronic swelling in his ankle, and back pain. (Doc. 10-14 at 23) She noted Plaintiff had a decreased range of motion, "decreased rectal tone," and "moderate to severe asthma." (*Id.*) Dr. McLain believed Plaintiff can walk "5-10" city blocks without rest or severe pain; sit for two hours at one time and a total of at least six hours a day; and stand for one hour at one time, or about four hours total in an eight-hour day. (*Id.* at 25) Further, Dr. McLain opined Plaintiff needed to be able to shift positions at will from standing, sitting, or walking; and must walk every 90 minutes for 10 minutes at a time. (*Id.*) She believed Plaintiff could frequently twist, stoop, and bend; occasionally crouch and squat; and rarely climb stairs and ladders. (*Id.* at 27)

2. The ALJ's evaluation of the opinions

Addressing the medical evidence, the ALJ indicated the opinions of Dr. McLain were "given limited weight." (Doc. 10-3 at 23) The ALJ explained her reasoning by stating:

> It is puzzling that the doctor was unable to get some type of psychological testing considering the facility where she treated the claimant had on staff psychiatrists and other mental health professionals. These opinions are given little weight. After a careful review of the treatment record, it is clear that Dr. McClain seldom saw or examined the claimant. Stephen Hargett, M.D. provided mental health treatment for the claimant, not Dr. McClain. There is no indication in the record that the claimant actually examined the claimant around the dates she completed the checkbox RFC forms [Exhibit 14F, 14F12]. Further, the treatment records, including diagnostic tests and report of symptoms by the claimant do not support the limitations as suggested by Dr. McClain. There is one treatment record dated December 21, 2017 when Dr. McClain may have examined the

7

> claimant, and the examination was normal. The claimant reported he had ankle pain while playing golf [Exhibit 14F16-20]. The ability to play golf strongly suggests that the claimant is not as limited as alleged.

(*Id.* at 23-24)

Plaintiff argues that "the ALJ failed to provide any legitimate reason for rejecting these opinions" and discounting the opinion of Dr. McLain "in favor of the non-examining State agency consultants." (Doc. 13 at 16)  The Commissioner argues that the ALJ identified "valid reasons supported by substantial evidence in discounting the opinion[s]" of Dr. McLain.  (Doc. 17 at 9)

### a. Psychological testing

Notably, the record does not support the ALJ's speculation that the psychological testing Dr. McLain wanted for Plaintiff was available at Clinica Sierra Vista because the facility "had on staff psychiatrists and other mental health professionals." (*See* Doc. 10-3 at 23)  Dr. McLain noted in November 2015 that she would refer Plaintiff "for psychiatry and neuropsychiatric testing." (Doc. 10-10 at 6) At a follow-up appointment in January 2016, Dr. McLain opined that Plaintiff's "psych diagnoses [were] unclear" and she referred him the psychiatric department at UCSF Fresno "for neuropsych testing." (Doc. 10-19 at 57)  However, that was "not a service that [was] offered at [the] facility." (*Id.* at 65)  Therefore, Plaintiff was offered assistance by the clinic with getting an appointment "with the proper facility for testing." (*Id.* at 65)  At a visit in April 2016, Dr. McLain noted "[d]ifficulty obtaining [an] appointment with neuropsychiatry." (*Id.* at 5)

Moreover, the ALJ fails to explain how the lack of neuropsychiatry testing that Dr. McLain believed was necessary to clarify the psychological diagnoses undermines Dr. McLain's opinions regarding Plaintiff's limitations.  Consequently, this is not a "clear and convincing" reason for rejecting the mental and physical limitations identified by Dr. McLain.

### b. Frequency and form of treatment

An ALJ may consider the length and frequency of treatment in evaluating what weight to give the opinion of a treating physician. 20 C.F.R. § 404.1527(c)(2)(i); *see also Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion); *Allen v. Comm'r of Soc. Sec.*, 498 Fed. App'x 696, 697 (9th Cir. 2012) (finding a "limited treatment relationship with [the claimant] was a specific and legitimate reason

to assign little weight" to the treating physician's opinion).  However, a limited treatment relationship cannot alone support the rejection of a treating physician's opinion. *Rodriguez v. Berryhill*, 2017 WL 896304 at *10 (E.D. Cal. Mar. 6, 2017); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that while a limited treating relationship may be a valid reason for not giving controlling weight to the opinion of a treating physician, "it is not by itself a basis for rejecting them").

In the questionnaire, Dr. McLain indicated Plaintiff had been treated at Clinica Sierra Vista since 2011, and she first treated Plaintiff in 2015. (Doc. 10-14 at 19, 23)  In addition, Dr. McLain noted that Plaintiff was seen "approx[imately] every 3 months." (*Id.* at 23)  Despite this information, the ALJ rejected Dr. McLain's opinions, in part, on the grounds that "Dr. McClain [sic] seldom saw or examined the claimant." (Doc. 10-3 at 23-24)  Furthermore, the ALJ found "no indication in the record that [Dr. McLain] actually examined the claimant around the dates she completed the checkbox RFC forms." (*Id.* at 24)

Importantly, the record does not support the ALJ's contentions regarding the treatment provided by Dr. McLain, or the frequency thereof. As Plaintiff observes, the treatment record includes notes from Dr. McLain from 2015 to 2017. (*See, e.g.*, Doc. 10-10 at 7; Doc. 10-15 at 20-23; Doc. 10-16 at 12-20; Doc. 10-19 at 3-12)  In November 2015, Dr. McLain diagnosed Plaintiff with major depressive disorder agoraphobia, anxiety, and mental retardation.  (Doc. 10-10 at 6)  At that time, she prescribed Paxil for Plaintiff to take daily. (*Id.* at 7)  In January 2016, Dr. McLain noted Plaintiff presented with depression and weight loss, though he did not have "anxious/ fearful thoughts or fatigue." (Doc. 10-19 at 5)  She observed that he seemed forgetful and found Plaintiff had "[p]oor judgment." (*Id.* at 10) Dr. McLain directed Plaintiff to continue the medical as prescribed, which included an increased dose of Paxil. (*Id.*)  Further, in 2017, Dr. McLain continued to note that Plaintiff suffered from mental impairments—such as a panic disorder, agoraphobia, and anxiety— which were treated with prescription medication. (Doc. 10-15 at 23; Doc. 10-16 at 12-13, 20)  Consequently, the record does not support the ALJ's assertion that Dr. McLain did not provide any mental health treatment to Plaintiff.

Finally, the frequency of treatment from Dr. McLain does not support the ALJ's decision to give less weight to the opinions of Dr. McLain. The Ninth Circuit indicated that a physician who treats

a patient even only once may be considered a treating source when the physician's opinion represents both personal knowledge of a patient's condition and information communicated by other members of a treating team. *See Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003). Dr. McLain both examined Plaintiff and was aware of his diagnosis history and findings by other physicians at Clinica Sierra Vista, including range of motion testing. (*See e.g.,* Doc. 10-10 at 6-7 [noting Plaintiff's prescription medication history]; Doc. 10-16 at 7, 12-13 [discussing the range of motion in Plaintiff's spine, as well as his medical issues and the onset dates]). Thus, Dr. McLain's opinions were entitled to the weight of a treating physician, and the ALJ erred in rejecting the opinions on these grounds.

### c. Inconsistency with the record

An ALJ may reject the opinions of a physician where the opinions are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the physician's notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). To reject an opinion as contradicted by the medical record, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

The ALJ found "the treatment records, including diagnostic tests and report of symptoms by the claimant do not support the limitations as suggested by Dr. McClain." (Doc. 10-3 at 23) In support of this conclusion, the ALJ cited "one treatment record dated December 21, 2017 when Dr. McClain may have examined the claimant, and the examination was normal." (*Id.*) However, as Plaintiff observes, "no tests were performed" that day regarding Plaintiff's reports of pain. (Doc. 13 at 18, citing AR 610-15 [Doc. 10-15 at 20-23]) (emphasis omitted) Instead, the treatment note identified by the ALJ concerned a panic attack Plaintiff suffered during an MRI. (*See* Doc. 10-15 at 20) At that time, Dr. McLain noted Plaintiff suffered from a "panic disorder," and his psychological symptoms were positive for "anxiety." (*Id.* at 22-23) Thus, the treatment note cited by the ALJ does not include diagnostic tests

10

that undermine the findings of Dr. McLain related to Plaintiff's mental functioning.  Further, the lone treatment note cited by the ALJ does not address Plaintiff's physical limitations or contradict any findings by Dr. McLain related to Plaintiff's physical abilities.

Because the ALJ failed to carry her burden to identify clinical findings or objective evidence that she believed to conflict with the limitations identified by Dr. McLain, she erred in rejecting the opinions as inconsistent with the treatment notes or record as a whole.

### d. Plaintiff's level of activity

The Ninth Circuit determined a an ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities).

The ALJ noted that Plaintiff "reported he had ankle pain while playing golf," and opined "[t]he ability to play golf strongly suggests that the claimant is not as limited as alleged." (Doc. 10-3 at 24, citing Exh. 14F, p. 16-20 [Doc. 10-15 at 17-21])  In the treatment note cited, Dr. McLain noted Plaintiff reported he had pain while golfing following his ankle surgery, and she directed him to use an "ACE bandage and ankle brace before engaging in physical activity if ankle pain is severe." (Doc. 10-15 at 20)  However, Plaintiff testified at his administrative hearing that he could no longer golf, due to his ankle pain and an inability to afford it. (Doc. 10-3 at 49)

Regardless, the ALJ fails to explain her conclusion that Plaintiff's *prior* ability to golf conflicts with the mental and physical abilities and limitations identified by Dr. McLain, who opined Plaintiff had "ankle pain [with] prolonged standing" and could only walk "5-10 city blocks without rest or severe pain." (Doc. 10-14 at 23, 25)  Furthermore, there is no explanation as to how the ability to golf conflicted with her findings that Plaintiff exhibited impaired impulse control, difficulty thinking or concentrating, recurrent obsessions or compulsions, irrational fears, and illogical thinking.  (*Id.* at 20)  Dr. McLain also believed "even a minimal increase in mental demands or change in the environment [could] be predicted to cause [Plaintiff] to decompensate." (*Id.* at 22)  Because the ALJ fails to explain

11

her conclusion that Plaintiff's activity conflicted with the findings of Dr. McLain, this is factor does not support the decision to give less weight to opinion of Plaintiff's treating physician.

### 3. Conclusion

The ALJ failed to carry the burden to identify clear and convincing reasons to reject the mental and physical limitations identified by Dr. McLain. Consequently, the ALJ erred in evaluating the medical record and the opinions of Plaintiff's treating physician.

**C.  Evaluation of Plaintiff's Subjective Statements**

Plaintiff testified at an administrative hearing on May 14, 2018. (Doc. 10-3 at 32) He reported he was born in 1977 and was a high school graduate. (*Id.* at 37) Plaintiff said he never had a driver's license because he could not pass the test. (*Id.* at 39-40) He reported that friends transported him to appointments and places he needed to go and sometimes he took the bus, but Plaintiff needed anxiety medication to ride the bus. (*Id.* at 40)

He said he worked previously packing golf supplies and would "put stuff in boxes and tape… it up and put [it] on conveyer belts." (Doc. 10-3 at 38) He reported the job required "standing all day," and the boxes he lifted were up to 70 lbs when full. (*Id.* at 38-39) Plaintiff said he was unable to work because he had "bad asthma" in the five years since he moved to California, which required him to use "three different inhalers." (*Id.* at 40-41) He also stated that he had right ankle pain and swelling after breaking his ankle. (*Id.* at 41, 43) Plaintiff said he had surgery on his ankle and went through physical therapy, but still could not "stand too long." (*Id.*) He said he continued to wear an ankle brace and elevate his leg for an hour each day. (*Id.* at 44)

In addition, Plaintiff reported he would "get super anxious" and his "brain just keeps working faster." (Doc. 10-3 at 45) He stated he had been taking anxiety medication for more than a year. (*Id.* at 46) Plaintiff said he took another pill if he began to feel anxious. (*Id.* at 47) For example, Plaintiff said he took two prior to the administrative hearing. (*Id.*) Plaintiff testified that the medication made him "feel more relaxed and tired," but helped "a lot." (*Id.*)

He reported he was able to prepare a meal for himself, and did not need assistance with showering, bathing, or dressing. (Doc. 10-3 at 48-49) Plaintiff said he used to play golf but stopped because of his ankle pain and inability to afford it. (*Id.* at 49)

Plaintiff estimated he could walk "like a block" before he needed to take his break and use his inhaler. (Doc. 10-3 at 45) He said he also would "sit down on the side of the block for a couple of minutes." (*Id.*) Plaintiff testified he could "do [a] little bit of yard work, about 30 minutes/35 minutes" before his leg started to swell and he needed to elevate it. (*Id.* at 48) He said he took "a lot of Aspirins, Tylenol" after activities such as yardwork, dusting, or sweeping. (*Id.* at 51) He reported he could sit in one position for about 30 minutes at one time before he needed to get up to avoid stiffness. (*Id.* at 50-51) In addition, Plaintiff said he it was "tough" to lift a 50-pound bag of dog food, and believed he could comfortably lift and carry 30 pounds. (*Id.* at 51)

   1.  Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess

how the adjudicator evaluated the individual's symptoms." Social Security Ruling[1] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) ("findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

2.  The ALJ's analysis of Plaintiff's statements

Addressing Plaintiff's statements regarding his impairments and the severity of his symptoms, the ALJ summarized the hearing testimony and stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence and limiting effects of his or her symptoms, they are inconsistent because the medical record and treatment history does not support the severity, intensity, or frequency of symptoms as alleged.

(Doc. 10-3 at 21-22) The ALJ then summarized the medical record related to Plaintiff's impairments. (*See id.* at 22)

Plaintiff argues that the ALJ's reasoning is "neither clear nor convincing." (Doc. 13 at 23) Instead, Plaintiff contends "[t]he ALJ gave the usual boilerplate" language, and "then recites medical evidence…" (*Id.* at 23) On the other hand, the Commissioner argues that "[t]he ALJ properly discounted Plaintiff's assertions of disabling pain and symptoms." (Doc. 17 at 13, emphasis omitted)

---

[1] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

### a. Use of boilerplate language

The ALJ's finding that "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible..." has been criticized by courts—including the Ninth Circuit— as "boilerplate language." *See Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). The Ninth Circuit found "this boilerplate language is problematic," and "subverts the way an RFC must be determined relying on credible evidence, including testimony." *Id.* As a result, the Ninth Circuit determined "inclusion of [the] flawed boilerplate language" "does not ... add anything to the ALJ's determination." *Id.* Because the ALJ included only the boilerplate language and did not specifically identify "the reasons explained in the decision," her analysis of Plaintiff's subjective complaints was flawed.

### b. Summary of the medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). However, as the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

Importantly, the Court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)) In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.*

at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered little more than a summary of the medical evidence and boilerplate language to support her rejection Plaintiff's credibility.[2]

       c.       Work history

The Commissioner contends, "the ALJ noted that Plaintiff did not stop working because of his alleged pain or symptoms." (Doc. 17 at 16) Specifically, the ALJ noted Plaintiff testified that he "quit his last job in June 2011, to move from the State of Arizona to California, to be with his the mother of his child," and that he had "been unable to find a job since moving to California." (Doc. 10-3 at 21) The Commissioner argues these were "valid reasons to discount Plaintiff's testimony." (Doc. 17 at 16)

"Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work." *Franz v. Colvin*, 91 F.Supp.3d 1200, 1209 (D. Or. 2015) (citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) ("[a]n ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination"). Notably, however, the ALJ did not make any finding that Plaintiff had a poor work history. The ALJ merely summarized Plaintiff's testimony, which included the statement that he had voluntarily left his packing job to move to California. (*See* Doc. 10-3 at 22)

Moreover, it is unclear how Plaintiff's candor over leaving his job to move undermines the credibility of his subjective complaints—namely, that he is no longer able to work due his level of pain and anxiety. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (a claimant's work history does not support an adverse credibility determination if the claimant "experience[d] pain and limitations severe enough to preclude him from maintaining substantial gainful employment"). Because the ALJ did not make any findings regarding Plaintiff's work history, or find Plaintiff's work history undermined his credibility, this factor does not support the adverse credibility determination. *See Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "post hoc rationalizations that attempt to intuit what the [ALJ] might have been thinking").

---

[2] Significantly, a claimant's "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### d. Failure to identify the testimony being discounted

Finally, the ALJ must identify what testimony is not credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ did not carry this burden, the Court finds the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

**D.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the physical and mental

17

limitations assessed by Plaintiff's treating physician.  Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's limitations, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886. In addition, the matter may be remanded further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony. *See, e.g., Bunnell*, 947 F.2d at 348; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true).  Thus, the Court finds remand is appropriate for an ALJ to reconsider the medical evidence, clarify the extent to which Plaintiff's testimony was rejected, and identify legally sufficient grounds to support the decision.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record and Plaintiff's subjective complaints. Consequently, the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. Plaintiff's motion for summary judgment (Doc. 13) is **GRANTED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Francisco Michael McElfresh, and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 17, 2020**                    **/s/ Jennifer L. Thurston**
                                                                       UNITED STATES MAGISTRATE JUDGE